UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | | |
|---|---|---|
| KEVIN CLODFELTER, | ) | |
| | ) | 08-2131 |
| Plaintiff, | ) | |
| | ) | Jury Trial Demand |
| vs. | ) | |
| | ) | |
| UNITED PROCESSING, INC., | ) | |
| a Florida corporation, LISA WATERS, | ) | |
| and CYNTHIA SWICK, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

NOW COMES Plaintiff, KEVIN CLODFELTER, by and through his attorneys, Brankey & Smith, P.C., and for his Memorandum in support of an award of damages states as follows.

**I.    INTRODUCTION**

On June 11, 2008, Plaintiff filed the above-captioned lawsuit against Defendants alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, and the Illinois Consumer Fraud and Deceptive Business Practices Act. Defendants engaged in a scheme to contact Plaintiff's family in order to embarrass and threaten Plaintiff into paying a debt that was satisfied in 2006.

The Complaint was served on Defendants by private process server. On August 1, 2008, Plaintiff filed a Motion For Entry of Default.

**II.   FACTS OF THE CASE**

If this matter were to go to trial, Plaintiff would call himself as a witness. On December

21, 2006, Defendants contacted him and threatened him with criminal prosecution in order to collect a debt. He promptly paid the debt with an electronic fund transfer. A copy of the Money Gram receipt is attached to the Complaint. On May 15, 2008, Defendants made several telephone calls to his grandmother, father, mother, step father, step mother, and brother in an attempt to collect the debt. During each call, Defendants informed the third parties that they were collecting the debt and that Plaintiff would be criminally prosecution if the debt was not paid immediately. When Plaintiff eventually called Defendants he was also threatened with criminal prosecution. He would also testify that the telephone calls caused him enormous anxiety, despair, frustration and embarrassment. He would testify about how the barrage of telephone calls placed a strain on his family. A copy of his Affidavit is attached hereto and incorporated herein by reference as Exhibit A.

Plaintiff would also call his mother, Linda Schrock, as a witness. Linda would testify that she is Plaintiff's mother and that she and her husband, Joe Schrock, do not reside with the Plaintiff. In early May 2008, Defendants contacted Linda's residence in order to collect the debt. Her husband, Joseph Schrock, answered the telephone. He told the Defendants that Kevin does not reside with them and asked that the Defendants not call him again. On May 15, 2008, at about 11:00 a.m., Defendants contacted the human resources department at Linda's employer, R.R. Donnelley's in Mattoon, Illinois. Defendants spoke with an employee named Susan. Defendants told Susan that they needed Linda to contact Kevin immediately because he was going to be arrested by the Sheriff. Susan instantly contacted Linda and relayed the message. Linda returned home at 4:15 p.m. and her mother-in-law, Juanita Schrock arrived. Juanita had received a telephone call from the Defendants as well. Linda found two messages from the

2

Defendants on her answering machine. Each message stated that it was legal matter, that Kevin needs to hire an attorney, and that he needs to call 904-723-3175. At about 4:30 p.m., Kevin arrived at Linda's house. Juanita and Linda told Kevin about the telephone calls and played the answering machine messages for him. Linda witnessed Kevin call Defendants from her telephone. Defendants hung up on him. Kevin then called back and spoke with a different employee. Kevin eventually hung up. Defendants called back and Linda spoke with a female named Kimberly. Kimberly was abusive to Linda and Linda told her to stop screaming at her, to not call her at work again, and to not call her at home. Linda then hung up. A copy of her Affidavit is attached hereto and incorporated herein by reference as Exhibit B.

Joseph Schrock would also be called as a witness. He would testify that he is the step father of the Plaintiff and that the Plaintiff does not reside with him. In early May of 2008, Joe received a telephone call from the Defendants. The Defendants identified themselves and stated that they were collecting a debt owed by the Plaintiff. He would testify that he advised the Defendants that the Plaintiff does not reside there and asked Defendants to not call again. On May 15, 2008, Defendants made at least five telephone calls to Joseph Schrock and his wife Linda in order to the collect the debt.

Juanita Schrock would also be called as a witness. Juanita would testify that she is the grandmother of Plaintiff and that she does not reside with him. Juanita would testify that on the morning of May 15, 2008, she received a telephone call from the Defendants. They identified themselves and stated that Plaintiff was facing felony charges because he did not pay the Money Place debt. Defendants then attempted to have Juanita give them the telephone numbers of Plaintiff's family and friends.

Ken Clodfelder would also be called as a witness. Ken would testify that he is the father of the Plaintiff. On May 15, 2008, Ken received a telephone call from an employee of the Defendants named "Thomas." Thomas explained that he was collecting a debt owed by the Plaintiff. Ken advised Thomas that Kevin does not live there and asked him not to call again.

Star Clodfelder would also be called as a witness. Star would testify that she is the step mother of Kevin and that he does not reside with her. On May 15, 2008, she received at least one telephone call from the Defendants. She would testify that the Defendants informed her that they were collecting a debt and that Kevin would be criminally prosecuted if the debt was not paid immediately.

Chris Clodfelder would also be called as a witness. Chris would testify that he is the brother of Kevin and that Kevin does not reside with him. On the evening of May 15, 2008, Chris received a telephone call from an employee of the Defendants named Thomas. Thomas informed him that he had a warrant for the arrest of Kevin and wanted to contact Kevin to see whether the debt could be paid in order to avoid the arrest and criminal prosecution of Kevin. Chris would testify that he felt that he was being pressured to pay this debt. Chris told Thomas that he did not know how to contact Kevin and to not contact him again.

Plaintiff would also ask the Court to take judicial notice of other pending lawsuits against Defendants alleging identical violations of the law. Plaintiff's counsel has uncovered eight lawsuits filed in Federal courts against Defendants alleging the same scheme of threatening criminal prosecution in order to collect a debt. Plaintiff would offer this as evidence of a *modus operandi* and to rebut any argument of mistake or bona fide error. Copies of the Complaints are attached hereto and incorporated herein by reference as Exhibit C.

## III. APPLICABLE LAW

### A. Fair Debt Collection Practices Act

In 1977, Congress responded to widespread abuse in the debt collection industry by enacting the Fair Debt Collection Practices Act. Senate Report No. 95-382 stated the need for this law:

> The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretenses, impersonating public officials and attorneys, and simulating legal process.

The Senate Report also states the economic reality of what fuels the abuse: "Collection agencies generally operate on a 50-percent commission, and this has to often created the incentive to collect by any means." A copy of Senate Report No. 95-382 is attached hereto and incorporated herein by reference as Exhibit F.

Defendants violated Sections 1692c(b), 1692d, 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(7), and 1692e(10) of the Fair Debt Collection Practices Act (FDCPA) when they contacted third parties to collect the debt, when they engaged in conduct where the natural consequence is to harass, oppress or abuse the Plaintiff and his family, when they misrepresented that he still owed the debt he paid in 2006, when they threatened that nonpayment of the debt will result in arrest and criminal prosecution, and when they implied that the failure to pay the debt was a crime. Further, this is not an isolated act involving one debt collector making one telephone call

to a debtor. This is a calculated and coordinated plan to systematically call employers, friends and family in order to embarrass, threaten or intimidate a family member or the debtor into paying a debt. Defendants contacted eight people and threatened criminal prosecution to collect the debt that was paid in 2006. Moreover, Defendants are doing the same thing many times over every day to countless individuals as documented in the complaints attached as Exhibit C.

Section 1692k of the FDCPA allows a Plaintiff to recover statutory damages, actual damages, and attorneys fees. Plaintiff testified regarding the mental anguish they suffered during the course of the debt collection. In this case, Plaintiff is requesting $1,000.00 in statutory damages, $999,000.00 in actual damages, and reimbursement of the attorneys fees and costs incurred during the case.

**B.     Illinois Consumer Fraud and Deceptive Business Practices Act.**

Plaintiff alleges that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act. In order to prevail, a plaintiff must prove: (1) that a defendant engaged in scheme or plan; (2) that the defendant acted with intent to deceive individuals; and (3) that the scheme or plan occurred during the course of trade or commerce. *815 ILCS 505/2. Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 943 (7th Cir. 2005); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) Further, the Illinois General Assembly has stated that the Illinois Consumer Fraud and Deceptive Business Practices Act shall be liberally construed to effect its purpose. *815 ILCS 505/11a* (2000). Debt collection amounts to trade or commerce for the purposes of the Act. *People ex rel Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 165 Ill. Dec. 655 (1991). In addition, the Act does not require proof of all of the elements of common law fraud. *Bandura v. Orkin Etermininating Co., Inc.*, 865 F.2d 816 (7th Cir. 1988).

The Plaintiff need not show that he was actually deceived by the conduct of the defendants. *Olympic Chevrolet, Inc. v. General Motors Corporation*, 959 F. Supp. 918, 920 (N.D. Ill. 1997); *Portillo v. Georgie Boy Mfg.*, 2005 U.S. Dist. LEXIS 25071 (N.D. Ill. October 26, 2005). A plaintiff is entitled to noneconomic damages such as emotional distress, aggravation and inconvenience under the act. *Roche v. Fireside Chrysler*, 235 Ill. App. 3d 170, 600 N.E.2d 1218 (2d Dist. 1992). In this case, Plaintiff alleges that Defendants violated the law when it threatened the Plaintiff with arrest, criminal prosecution and imprisonment during the course of debt collection.

Section 10 of the Act allows the Plaintiff to recover actual damages arising out of the conduct in the Complaint. Plaintiff is requesting actual damages in the amount of $300,000.00. Section 10 of the Act also allows a plaintiff to recover punitive damages against a defendant when the defendant acts with willful and wanton disregard for the rights of the plaintiff. Plaintiff has met this burden and requests punitive damages in the amount of $700,000.00. The Defendants in this case are experienced debt collectors. Moreover, they have been placed on notice in previous lawsuits that they cannot threaten criminal prosecution in order to collect a debt and that they cannot contact third parties as a means of debt collection. The sheer number of lawsuits against the Defendants indicates that the Defendants are on notice regarding their debt collection tactics. *See Exhibit C.* They are applying cost benefit analysis.

**IV.    CONCLUSION**

Finally, Plaintiff would offer examples of two local cases to justify a request for a judgment in the amount of $1,000,000.00. In 2003, Theresa Finney sued attorney Charles T. Hutchins and National Check Control in Effingham County Circuit Court for violation of the

Illinois Consumer Fraud and Deceptive Business Practices Act where defendants sent a debt collection letter and made several telephone calls threatening criminal prosecution in order to collect a bad check. Judgment was entered in favor of Finney and against attorney Hutchins in the amount of $300,000.00. A copy of the complaint and judgment is attached hereto and incorporated herein by reference as Exhibit D. In 2004, Rita Pinkstaff and Barbara Roan sued Lenahan Law Offices, L.L.C. and its two members for violation of the Fair Debt Collection Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act when Defendants threatened criminal prosecution in order to collect credit card debts. Pinkstaff and Roan each received a judgment in the amount of $217,085.00. A copy of the Amended Complaint and the Judgment is attached hereto and incorporated herein by reference as Exhibit E.

The facts in this case are far more egregious. In 2006, Defendants used the threat of criminal prosecution to coerce a payment from Plaintiff. In 2008, the same Defendants attempted to collect the same debt by threatening the Plaintiff with criminal prosecution. These same Defendants also contacted his grandmother, mother, step mother, father, step father and brother in order to collect the debt. It is impossible for Defendants to give a credible explanation of this serious violation of the law. A judgment of $1,000,000.00 will negate any profit earned by Defendants using this unlawful scheme of threats and harassment. Further, a judgment of $1,000,000.00 will deter other debt collectors from engaging in similar misconduct.

KEVIN CLODFELTER, Plaintiff

s/ Roy Jackson Dent

Roy Jackson Dent
Bar Number 6255835
Attorney for Plaintiff
BRANKEY & SMITH, P.C.
622 Jackson Avenue
Charleston, IL 61920
Phone: (217) 345-6222
Fax:    (217) 345-6232

Email: rdent@brankeysmithpc.com